Thank you. May we see you? First case up this morning is 418-0737. Housing Authority of Cass County v. Assisted Housing Risk Management Association. For the appellant is Luke Thomas, URA, sir. For the appellee is Mark Binsmore, URA. Mr. Thomas, may I have your seat, sir? Thank you. May I please support and oppose in counsel? Counsel. The primary issue raised throughout this appeal involved questions of law, and that's why we believe the noble review is appropriate review for this court to apply. For today's purpose, I'd like to focus my argument on two primary reasons we believe the trial court committed reversible error. The first issue is whether the trial court improperly turned over its obligation to make those determinations of the law over to the jury. Did you ever ask for the court to make them? Yes, we did, Judge. When did you do that? We did that in our original motion to dismiss and strike the defendant's affirmative defenses back in 2012, our subsequent motion to strike and dismiss those affirmative defenses for plaintiff's final set of affirmative defenses. We asked during the course of trial that the court make those determinations as a matter of law, and we raised it in our post-trial motion. You asked the court to rule on which housing code applies. No, I did not ask them that. Well, wasn't that a question of law that you say should have been decided? Yes, and in addition to others. Why wouldn't you ask the most, I guess to me the most basic question was, one of the most basic questions was, which housing code applies? You never asked that? I never asked the court to determine that. Okay. Go ahead. I believe that's because we get to the affirmative defenses, and all of those are basically statements of law. The interpretation of the policy or the contract and the meaning of those definitions and whether they apply to the facts of the case are all something that the court has to resolve. Those should never have been turned over to the jury to determine if there was coverage afforded. The court alluded, and the defendant argues at page 28 of its brief, that the plaintiff waived this line of argument because it never filed any motion bringing it to the court's attention during trial. As I touched on, we did file a motion to strike and dismiss those affirmative defenses. We filed a subsequent motion to strike those affirmative defenses, and we argued again. For instance, when Ms. DePassi testified and gave her opinion on whether coverage was available or not. What did your motion to strike and dismiss say to each of these affirmative defenses, since you don't lay that out in your brief? That they were statements as a matter of law? For instance, whether the property's foundation was below grade. If that all of a sudden made it an excluded claim, no matter what else occurred, is that a cause to find exclusion? Why would that be a motion to strike or dismiss? That sounds to me like you're asking for the court to determine if that's a question of law. That's correct. How does that make it a motion to strike or dismiss? An affirmative defense can be a matter of law as well as a matter of fact, can't it? I'm trying to figure out. Why would you couch your request to ask the court to rule on these matters as matters of law as a motion to strike or dismiss an affirmative defense? That sounds to me like two completely different things. I guess in general, and maybe the heading and the manner in which that was asked of the court in a motion to strike and dismiss, but the overall theme was that these issues, whether there's coverage afforded under this policy, is a matter of law. How about a motion for summary judgment? A motion for directive finding? Well, the court already determined that that is a matter of law, that there was an issue of material fact on the defendant's motion for summary judgment, and when it refused to grant those motions to strike. Well, that's sort of true. What happened was you waited until their motions for summary judgment, where you were kind of in a box now, because now you have to argue that there's facts that are still an issue, or you're going to wind up losing your summary judgment motion. But I'd be amazed at how you point to me in the record where you have specifically asked the court to make findings or to rule that each of these various issues you raise are questions of law, which need to be decided by the court. I mean, I believe the record is indicated, and maybe the court doesn't agree. Because you don't put them in your brief. We have to go search through the record to find them. So I'm asking you, because we already spent the time looking for them, but I'm wondering whether you do. I did judge it, and I maybe didn't articulate it to the extent the court requires in the brief. I believe it was covered. I believe that we argued it and pointed out, when I'm arguing today, that the motions and the overall request were properly made to the court to determine this as a matter of law. Even in that regard, the court itself can still find that the trial court on its own did not apply the law the way it should have. Those questions still should have never went to the jury, no matter in what form or context I presented that to the court. I don't think that's something that this court has to be bound by and say it was waived. The court can still find that. Because we're placing it on the jury to determine the meaning of the language in the policy. Let me get to the exclusions. For instance, I touched upon whether the foundation was below grade. Does that, in and of itself, because that's the way the jury instruction read to them, that if the foundation was below grade, that's an exclusion. You have to find an exclusion exists. With respect to the jury instructions, what position did you take regarding the affirmative defense language being included in the jury instructions? Honestly, I was at a loss because I couldn't fathom how these questions of law should ever be submitted to the jury for determination. With the time constraints, I guess I didn't offer an alternative because I took the position that those shouldn't have been presented the way they were presented. Well, you actually submitted some of your own. After I was told that those are going to be questions the jury has to determine, I tried to make the best of what I felt was a bad decision and tried to present something which admittedly wasn't even complete when it was submitted due to time constraints and my understanding that those were issues of law. During the instruction conference, did you take the position that it was appropriate for the jury to decide the affirmative defenses as an issue of fact? I don't believe I did. I don't believe I did. Again, even throughout the testimony, because I missed the past, we asked that her testimony be stricken and again request the court to be the arbiter of whether the policy provides coverage as a matter of law. I think when Mr. Paul, the insurance expert, testified, it was the same thing. The court didn't need to allow or bring these so-called experts in to tell the jury, yeah, you need to find coverage because X, Y, and Z is in the policy. That would be the court's job to tell them that. The court should make that determination as a matter of law that if this occurred, then you have to find for the defendant. We believe that it all boils down to, in this instance, did a covered cause of loss occur? The best we can tell is the jury found that. The jury did find that plaintiff proved its claim that a covered cause of loss occurred with that June 22, 2010 windstorm. Now, you're basing that on what? The jury. The check mark they placed about wind damage? Yes. And, of course, opposing counsel argues that that wasn't their finding. Their finding was that in the event of a wind damage, a loss resulted from wind damage, that would be covered. But it doesn't stand for the proposition that the jury found that here the loss resulted from wind damage. I don't know how they could get to the fact that plaintiff's claim is a covered cause of loss. Because if the windstorm just simply didn't occur, they wouldn't have a covered cause of loss. And I think they had to implicitly determine that a covered cause of loss occurred, that it was, in fact, the wind. Because if they believed the wind didn't provide it, they would never find that plaintiff proved its case. I know it's circular, but that's, I think, ultimately what the issue is. Regarding the request to admit, did you ever make a motion to strike the responses and ask the court for a hearing on whether or not the responses were appropriate? Yes, we filed two motions in regard to the request to admit. We asked originally that the facts that we set forth in the request to admit be deemed admitted as a matter of law, based on what we felt was wholly inappropriate and incomplete answers that the defendant provided. Incomplete answers, isn't the response to move to strike these or have a hearing on the appropriateness of the response? Yes, and I believe we had a hearing on that. Is that the same thing as moving that the answers were admitted? I mean, the motion itself asks the court to deem these facts admitted. It's a motion to deem facts admitted. Aren't you skipping a step? You went from getting responses, and rather than addressing those responses as what you claimed to be inadequate, you now want the court to go ahead and deem the facts as admitted, although there's been no finding yet. You just feel, to be the case, that they were inadequate or improper. Don't you have to give the court the opportunity first to address whether these responses are appropriate, whether they are incomplete, whether they're being, in fact, evasive, or your inquiry was overly burdensome? And doesn't the court have the right to make that determination first before you say, well, we want these facts now deemed admitted because we think they're inappropriate? Do you see the distinction? Yeah, I mean, I think that would have to be part of the trial court's analysis of whether it deemed those facts admitted. And to that extent, if that was... You skipped a step of whether they're appropriate or not. You made that conclusion that they're inappropriate, but you haven't let the court make that determination. You're just saying you want them deemed admitted. The court's option at that point is either grant it or deny it. The court denied it the first time and said, well, you're still in discovery. Why don't you guys see where you can go? So three years later, what did you do? You filed the exact same motion. Correct. You didn't ever ask the court to actually address the responses themselves, nor did you, as is common practice, maybe tailor your questions based upon some of the responses. You know what? This response might be appropriate. Maybe I need to be a little more specific. So you send out a new set of requests to admit. You did nothing in response to their responses to change or alter any of your questions and just asked three years later for the judge to do the same thing, either admit them or deny them. Right? I mean, I believe the defendant stood on its responses. I mean, I don't know why I would have to ask the court. Well, counsel, maybe the way to explain this is this. A motion to deem the responses as having been admitted lies when there's no response. Then the request to admit should be deemed these questions all as admitted because of a failure to respond. When you have a response and you claim it's inadequate, and by responding apparently the other side is claiming this is appropriate, you ought to ask the court for resolution of this dispute. That's what courts do, certainly in the discovery process, to say which, if any, of these responses is appropriate. And you never ask the court to do that. You just skip the step of the court's determination as if there was no response at all. I mean, I think when they take the position they can neither admit nor deny that, in effect they're obligated to either admit or deny it. Well, they responded in a way that they claim by their response is appropriate. So we were asking the court then, is that a legitimate response? Can the court actually believe that this defendant doesn't know where the property addition is located because they found something that differed in a statement of values that they generated? I mean, that's where we're at. You can't even get an agreement on the basic fact that this is the property located at 900 West 6th Street in Beardstown. Do you disagree that there were two different property descriptions given? I don't disagree. The description of the property in the complaint provides the address. The description in the request to admit defines the property address and what property building B. And they contend, well, the statement of values in the policy references a 201 and 202 Garnier, so we don't have to answer or admit your request to admit. So you just submitted your request with the new address on it. And we're telling, and our position is that's completely disingenuous to make us go to that step again. And basically all of their responses were that they didn't have to admit or deny because they didn't have the information available to make that determination in their possession. They all set forth what steps they took to get the information, why that information wasn't available to them. And I think that argument may have carried some weight with the trial court at the original hearing on the motion to being those facts admitted, noting the discovery issues and the, I guess, feeling that it was premature to ask that relief. But again, we went through discovery, and three years later, they never changed those answers to say, hey, now we know where the property's located. Hey, now we know this or that. They stood on their same answers to those same questions. So I think at that point, then, the parties have taken their position. These are the requests made. Their answer or lack thereof is their position. They don't have an obligation to look beyond what's in their personal possession or control. I think they put it as a burden shifting that's improper upon them. But I think adopting that line of thinking is going to require parties and it's going to incentivize parties to remain ignorant of facts in their case. It's going to limit, they're going to basically want to keep no information in their possession or control and make sure that people within the organization basically play dumb and don't gather any new information because then they can simply say, hey, we care if we have experts, we have attorneys, we have industry practices. We don't know what happened. We don't have anything in our possession that could say that a windstorm occurred or that that may be something that caused damage or that would be something that would be covered. So maybe if you'd taken that to the judge at the first round and let the judge make a determination as to whether those responses were appropriate or not, you could have got that resolved. Yeah, and I felt that that was properly presented to the court, that we are asking that court in the manner in which we present it to make those determinations that they have to answer this. They have to provide, they don't have to admit it, they just have to answer it. They did answer it. So we were outside of the realm of just admitting or denying. I think then the case law provides that neither admission nor denial doesn't constitute an answer at all. It's saying, hey, we just simply can't answer it without more, without laying forth what they did to discover the issue and to review the statement. Then you take it to the judge and say, judge, this is their response. And that's what we argue to the court. We want a more specific response to this. Instead, you said, no, you want to just have them deemed admitted. I think that's what we argue to the court is, hey, they've got these obligations. How can we let them get away with simply responding in this manner? When they say that's the answer they give and anything more than that's burden shifting, then we're asking the court, hey, does that answer by itself, is it deemed an answer? And we're feeling that once that answer was rested upon, that that then determines that they didn't admit or deny those facts and that the court, as a matter of law, should have resolved them as being admitted. I think the court touched upon the building code issue that came up during the course of trial and during the course of deliberations. That was illustrated that the jury itself had questions about whether the building code of 1967 applied or the 1972 HUD regulations. That's another one. Why don't you just ask, in your brief you say, throughout pretrial, plaintiff made several attempts to determine which building code defendant was applying. But what you submit are three questions, none of which just come out and ask the question, which building code are you applying? Your questions are, the design and construction of the subject property met and or exceeded any applicable building code requirements imposed by the city of Georgetown, which is actually a proof issue. So couched in terms of a proof issue, you want them to admit that all the codes or whatever codes that might be applicable are applicable. Instead, just ask them. Why didn't you ever ask them, which building code do you contend applies? Because there wasn't necessarily proof positive as to which building code applied. But that's not your question. Your question is, you want to know which building code they're going to apply to their analysis of this case. So why didn't you just ask them flat out, which building code applies? When you say that they asked them what building code applies, I mean, I understood they were taking the position that the 1967 code applied. Thank you. Thank you, counsel. Counsel, Mr. Ginspar, you may argue in the absence of their plea. Thank you, Your Honors. May I please have the court? Counsel. Regarding the issue of the motion to deem certain facts admitted, as the defendant pointed out in its brief response, I believe that the issue with the request to admit largely lies in the fact that many of the requests to admit revolved around alternate facts that were clearly disputed at trial. I think the record reflects that. I think it was largely inappropriate for those requests to admit to be cast the way they were and directed towards the defendant. I believe it was plaintiff's attempt at shifting the burden on the defendant early in the case in terms of discovering various issues that the plaintiff didn't take the effort to resolve on its own. And so I think that the court's response in that regard in denying the motion to deem those admitted, especially in light of the fact that the defendant responded appropriately under Rule 216, should be upheld and was not of an abuse of discretion. Regarding the affirmative defense matter, I believe that plaintiff did, in fact, throughout the course of this litigation, request that the court submit those matters to the jury for consideration. And I don't know that I cited this particular citation in my brief, but at SCCR 1147 to SCCR 1149, the issue of many of the affirmative defenses and the exclusions therein was brought before the court. And plaintiff specifically requested that the court submit those to the jury and took the position that those were questions for the jury's determination. So at every turn throughout this case, in the face of defendant's request to the court to determine these matters as a question of law, the plaintiff opposed those time and again, requested they go to the jury, and ultimately the plaintiff got what it wanted. And unfortunately, I believe they have brought this as an issue because the jury didn't come back with the verdict that they wanted in this instance. So I think that the court's handling of the affirmative defenses was consistent with the way the plaintiff requested the court handle those, and the court could not be faulted for that, in the sense that plaintiff would like the court to be faulted. In addition to that, I believe that the affirmative defenses that were pled, aside from the fact that they had originally been answered to by plaintiff and were at issue nearly five years before plaintiff tried to have those stricken, I believe that they sufficiently informed the plaintiff of the nature of the defenses that the defendant was going to be asserting the case, and that they highlighted the exclusions from the policy. You said you were being overly technical or picky about the address of the property. Well, Your Honor, the issue the defendant had with plaintiff's identification of the property lies in the issue of how it relates to the damages in the case. Defendant's concern early on was if there was a discrepancy as to the actual address at issue and which building plaintiff was claiming was at issue, the damages would be affected because the statement of value sheet that was attached as an exhibit to plaintiff's complaint that was originally filed at the court provided two different values for those two different properties that had been identified by plaintiff. And so it was defendant's concern early on that that could ultimately affect the damages at issue in the case, and that was the reason that they asserted the ejection they did. I don't believe that defendant denied the fact that they clearly rented out apartment buildings. I believe he admitted that in the request to admit. That was more to laying down the issue of damages, which ultimately was a contested issue in the case in the end as it turned out. Your Honor, plaintiff takes issue with the courts allowing evidence related to FEMA to have been admitted in the trial in the case. That issue or that court's ruling on that issue is reviewed under an abuse of discretion standard. In this instance, Your Honor, plaintiff did file a motion in limine regarding the issue of FEMA and the evidence related there too. However, though, at trial, plaintiff never objected to that evidence coming in contemporaneously  So I believe that plaintiff waived that issue on appeal. In addition to that, plaintiff, in questioning its own expert, Benjamin Kaczynski, opened the door to that evidence coming in at trial when, on a direct examination, he inquired into FEMA's presence at the building and the reasons therefore. So I believe the court's ruling in that regard should stand, should be affirmed on appeal. Regarding the jury instructions issue, I know plaintiff takes issue with the fact that, well, with the form in which they are presented to the jury. I'm not quite sure what plaintiff meant by that, but the jury instructions, and specifically the affirmative sentences, were presented to the jury in the same format and style that they were contained in the policy so as not to misrepresent the language from the policy. The copy of the policy was actually marked as an exhibit during trial. A complete copy of it was provided to the jury for consideration in the deliberations. It seems that plaintiff really only takes issue with a stylistic discrepancy. The portion of the jury conference transcript or record cited to, I believe, in our brief, notes that plaintiff actually submitted or tendered an exact set or same set of jury instructions as defendant had in the case. The only difference was, I believe, that plaintiff had taken some words that had been bolded in defendant's proposed instructions, and those were no longer in bold in plaintiff's instructions. And that was really the only difference. There was no substantive difference between the two sets of instructions, that tendered by defendant and that tendered by plaintiff in the case. So I believe that any objection that plaintiff may have to the use of those instructions or those being presented to the jury was ultimately waived because plaintiff felt to preserve that by objecting to the substance of the instructions themselves. Another issue that plaintiff has brought in its appeal to this court was the issue of the court granting summary judgment on the lost rental income claim. And plaintiff, in support of its argument, continuously and throughout litigation in the case, whenever this issue was presented to the trial court, they continued to rely on a definition from a general liability policy that was part of this coverage agreement that had been entered into by and between ARMA and the Housing Authority. And that is where their mistake lies. The general liability policy covers claims that are filed against the Housing Authority, and it outlines the duties of ARMA in defending the Housing Authority and identifying them, any of the claims that are brought against them. The portion of the coverage agreement that's at issue in this case is the coverage part that's known as the property form coverage part. And in that coverage part, it specifically excludes loss of use or loss of market, any claims related to that. And it's been the defendant's position this entire time that plaintiff's claim for lost rental income falls under that loss of use provision and therefore is excluded. So up to this point, plaintiff has never really pointed to a provision in the property form coverage part that it believes stands for coverage for its claim of rental income in this case. The defendant believes that based on that, the court was, or ruled properly in denying them their relief in that form or entering a summary judgment in favor of the defendant on that issue. Were there any counteraffidavits to the affidavits of your expert or your, the insurance man and the guy who was responsible for the forms, I think, submitted affidavits? I'm sorry, I didn't hear that last part. Did the plaintiff submit counteraffidavits to those? No, Your Honor, I don't believe it did. Plaintiff has also taken issue, Your Honors, with Steve Horton having been called as a witness in the case, an adverse witness. Again, the court's consideration of that issue is reviewed under abuse of discretion standard. In support of its position, plaintiff has cited the Garden View case, and upon reading the Garden View case, I believe they actually support the defendant's position in this case. The court in Garden View noted that an abuse of discretion may only be found where a reasonable man would take the view adopted by the, would not take the view adopted by the certain court, and that reversal is warranted only where the objecting party suffers prejudice and to determine whether the objecting party suffers prejudice, the court laid out six factors that should be examined to determine whether or not the party suffered prejudice, and I won't go through every one of those, but I did want to point out that in this instance, Mr. Horton was the executive director of the housing authority, both at the time the claim allegedly occurred and at the time of trial in this case. He held that position throughout the course of this litigation, and he was disclosed by plaintiff as being able to offer testimony at trial on a whole host of subjects, which were detailed in their answers in Robert Torey's 13 and 15 in this case, and not only that, he was deposed three times in this case, twice in discovery depositions, one generally when he was identified as a lay witness, an additional one when plaintiff amended or supplemented the discovery to identify him as a potential expert witness in the case, and then there was an evidence deposition whenever it was thought that he may not be available for trial. So not only had he been disclosed on being able to provide testimony on all these topics, but he had been deposed three times previously, and he had been questioned about all the topics he was questioned about at trial. So there was no gotcha moment or seeker seed in any of the topics that he was going to be able to provide testimony on, and he never claimed to not know or have knowledge related to the questions that he was asked. So I don't believe that they could honestly sit here and say that there are prejudices in any way. I understand that they take issue with the fact that he had been not disclosed as a witness previously, but I believe the Garview court ultimately ruled that, at worst, that would result in harmless error under the circumstances. And I think those same circumstances apply here in this case. So based on that, I believe that the court did not err in allowing him to be called as an adverse witness and asked the court to confirm that ruling. One other issue I wanted to discuss briefly was Plaintiff has taken issue with or suggested that there was jury confusion in the case, and they have relied upon a few questions that were submitted by the jury during the deliberations. I just wanted to point out to the court, because I don't believe that this was actually cited to in our brief, but the jury questions were responded to by the court on Document C-2237. And in that, the court responded to Question 1, and then the court asked the jury regarding their Questions 2 and 3 to specify what needs clarified. And the court noted at the bottom that these answers were consented to by all parties in the case, and there was never any objection by Plaintiff to responding to the jury's questions in this manner. So I think any suggestion that the jury was confused is not supported by the record, because the jury never came back noting any particular confusion, and I think that amounts to gross speculation in this instance. But in addition to that, Plaintiff never suggested any different language or objected on the record to the manner in which the court responded. So I think they've waived that issue on appeal. The final issue I just wanted to address briefly was the issue of prejudgment interest in the case. The court struck Plaintiff's prayer for prejudgment interest, and the Plaintiff has taken issue with that. I think that the record makes it clear that the damages in this case were not ascertainable. They were disputed from the very beginning to the very end of this trial. Plaintiff produced three witnesses itself that testified to different values for the square footage in the event the whole building issue was to be replaced. Although that was also disputed, the fact is whether or not the building itself had to be replaced. There was never any clear testimony provided by any of Plaintiff's witnesses the extent of any damage beyond the foundation damage that the defendant believed was the only damage at issue. So there was a discrepancy or an issue related to the extent of damage that Plaintiff was claiming in the case. Finally, the defendant presented an expert witness who was able to provide testimony on the issue of repairing the foundation issue. The numbers that he developed and provided at trial were a mere fraction of the numbers that were suggested by all three of Plaintiff's witnesses that testified to repairing or replacing the whole building in its entirety. But even they differed by nearly a million dollars. So I don't know that Plaintiff could honestly say that the damage is readily ascertainable when, even through trial, the damages that were at issue were disputed regularly. And so for that reason, I believe the court did not air a strike in their claim for prejudgment interest. Thank you, Your Honors. Okay, thank you, counsel. Mr. Thomas, any rebuttals, sir? Okay. Going back to the question of mixed facts, I think the court should note that the statement of values that counsel references and that they relied upon was actually a document generated by defendant and house. I think in that statement of values it references 201 and 202 Garnier. The only properties involved in this case are the Eddie Garnier apartments. So how defendant references them in their own format really shows that it's disingenuous to say, well, yeah, that's also at 900 West 6th. That's the property we're insuring. It's ludicrous to say that they would collect payments on something and not know what they're insuring. What building is at issue? Why are they accepting premiums for this? What building is insured? They said they're being highly technical about that, and we take the position, no, that it's just being difficult to frustrate the purpose of the Rule 216 request to admit. As far as shifting the burden, at the time these were propounded, the plaintiff had provided information and discovery to the defendant in regard to the wind speed. We provided newspaper articles and the federal document, certified federal document, establishing the wind was 100 miles an hour on that day in question. Yet defendant says, well, that's from a newspaper. We don't think that meets our standard of what's verifiable, so we don't have to admit or deny that. I mean, I don't know how you could logically take this to the point that to have an agent or a person within its company standing there on the day in question measuring the wind. For instance, if it rained yesterday, I'm going to look, and I wasn't here presently, I'm going to look in the newspaper and find out, did it rain? I'm going to look at whatever historic documents are there to tell me what the weather was on that occasion. Our defendant says they don't have to do that, even though that was provided to them before they even answered their request to admit. Now, they take issue with the 100 mile an hour wind that they presented at trial. The gentleman claimed the wind was 35 miles per hour. I don't think any reasonable juror could have believed that after the evidence was presented to them of the wind, the evidence of the wind and the damage resulting throughout the city of Beardstown, that that was a 35 mile an hour wind. That, too, would have been something that could have been resolved prior to trial. Did the wind occur? Because, again, our interpretation of the policy and what we've argued is that if wind is a cover cause of loss and it caused or contributed to plaintiff's damage, it doesn't matter if these other exclusions are here. If it had problems with its foundation, if it was not perfectly designed, those don't come into play because but for that windstorm, plaintiff would have not suffered any damage. Luckily, I guess the best evidence of this is we had two identically designed buildings, one of which was standing at trial and still occupied at trial. This one is situated where this windstorm, the testimony evidence of this windstorm, blew on this building, shielding the other building from the wind. We've also had testimony at trial that there was no evidence of doors out of jam and problems with the floor until after this wind event occurred. Plaintiff's expert testified at trial, Mr. Reinders testified at trial, that he was there before and after and he never noted any problems when he was doing his inspection with any doors being out of plumb or any gaps in any doors. So I think again, that's an issue that should have been submitted, should have been determined by the court once the determination is made, hey, wind is a covered cause of loss and it occurred not. I guess as far as whether the jury found that and its check mark on that questionnaire is something that this court will resolve. I think that that is the best evidence we have of what they believe occurred. I don't know how they could say that defendant's loss was a covered cause of loss because of this windstorm under the definition of the policy, but then find that no, it just isn't covered. Because again, if that is the covered cause of loss, it doesn't matter because if you take it to the point that after the fact, after any event, the insurer can come in and say, you didn't design your house correctly. We find all problems in the way you built your house. So I don't care if the wind blew it off its foundation. You didn't build it according to the way the code says, so we're not covering it. That's where we were arguing with the trial court. That's going to cause absurdities to result. Thank you, counsel. Your time is up. The court will take this moment now to advise them and be in recess for a few moments.